UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TOWNE AIR FREIGHT, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-750-JAR |
| | ) | |
| DOUBLE M CARRIERS, INC., MARK HEBRON and TRANSPORT EXPRESS, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter came before the Court for hearing on Plaintiff's Motion for Preliminary Injunction (Doc. No. 3) on May 14, 2014. The Court heard testimony from three witnesses[1] and received evidence on the motion. Upon consideration, the motion will be denied.

**Background**

Plaintiff Towne Air Freight, LLC ("Towne") brings this action for breach of contract, misappropriation of trade secrets, tortious interference with a contractual relationship and conspiracy against Defendants Double M Carriers, Inc. ("Double M"), Double M's president Mark Hebron ("Hebron"), and Transport Express, Inc. ("Transport Express"). Towne alleges that in 2007, it acquired MDM Group, Inc., d/b/a/ Complete Transport. Double M/Hebron was one of four shareholders of Complete Transport. As part of the acquisition, Double M/Hebron entered

---

[1] Towne called Terry M. McManus, St. Louis terminal manager for Towne; Defendants called John Sutherland, former shareholder of Complete Transport, and Mark A. Hebron, principal of Double M Carriers, Inc.

1

into an independent contractor agreement ("2007 IC Agreement") and a non-compete/non-solicitation agreement ("NC Agreement") with Towne. The non-compete agreement prohibits Double M/Hebron from competing with Towne or soliciting its employees and customers for three years after termination of the independent contractor relationship. Towne further alleges that in 2009, Double M/Hebron entered into a "substantially similar" independent contractor agreement with Towne ("2009 IC Agreement") and operated under this agreement until March 28, 2014, when it presented Towne with a letter purporting to terminate their independent contractor relationship. Towne alleges Double M/Hebron has attempted to take all of its customers and some of its employees to compete with Towne under the Department of Transportation (DOT) operating authority of Transport Express in violation of the NC Agreement. Towne moves for a preliminary injunction to enforce the NC Agreement and prevent Defendants from competing with Towne in the air freight trucking services industry, soliciting any of its customers or employees, and misappropriating its trade secrets, including customer information, all for a period of three years, through March 28, 2017.

Defendants oppose the motion, arguing that Towne canceled the contracts it is now seeking to enforce. Moreover, Towne does not have a protectable interest in that customer lists and rate sheets are not trade secrets or protectable confidential information. Alternatively, Defendants contend the service area and restrictions in the NC Agreement are unreasonably broad in duration and geographic scope so as to be unenforceable.

**Legal standard**

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07

(1959). A district court has broad discretion when ruling on a request for injunction. Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013). In determining whether a preliminary injunction should be issued, a district court must consider: (1) the threat of irreparable harm to the movant, (2) the balance between this harm and the harm to the other party if the injunction is granted, (3) the probability of movant's success on the merits, and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981).

**Discussion**

**A. Likelihood of success**

At the preliminary injunction stage, Towne must establish a substantial likelihood of prevailing on the merits of its claims. Anheuser-Busch, Inc. v. VIP Products, LLC, 666 F.Supp.2d 974, 981-82 (E.D.Mo. 2008) (citing Planned Parenthood Minn. v. Rounds, 530 F.3d 724, 732 (8th Cir.2008) (en banc) ("If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors."); Shrink Mo. Government PAC v. Adams, 151 F.3d 763, 765 (8th Cir.1998) (describing this consideration as the most important of the four factors).

To succeed on the merits of its claim for breach of contract, Towne must show that (1) there is a valid and enforceable NC Agreement; (2) the provisions are necessary to protect customer contacts or trade secrets; and (3) the provisions are no more restrictive than necessary and are reasonable as to time and geography. Carboline Co. v. Lebeck, 990 F.Supp. 762, 765-66 (E.D.Mo. 1997) (internal citations omitted). See also Sigma Chemical Co. v. Harris, 586 F.Supp. 704, 709 (D.C. Mo. 1984).

Here, the parties dispute whether there is an enforceable NC Agreement. According to

3

Defendants, the NC Agreement was intentionally abandoned when the parties entered into the 2009 IC Agreement on February 2, 2009 in order to avoid the risk of Double M's drivers being classified as employees as opposed to independent contractors. (Mem. In Opp., Doc. No. 23, pp. 8-9) Defendants contend the 2009 IC Agreement governed until October 25, 2012, when Towne's Senior Vice President of Human Resources and Corporate Administration, Jerry Scott, mailed a notice of cancellation to Double M/Hebron. (Doc. No. 23-1) While the parties continued to operate under the compensation structure of the 2009 IC Agreement, no new agreement or contract was ever reached. (Mem. in Opp., Doc. No. 23, pp. 4-5) Further, Defendants argue that even if the Court finds the NC Agreement is valid and enforceable, Towne is not entitled to injunctive relief because it cancelled the agreement without cause. (Id., p. 5) (citing Showe-Time Video Rentals, Inc. v. Douglas, 727 S.W.2d 426, 434 (Mo.Ct.App. 1987) and Ozark Appraisal Serv., Inc. v. Neale, 67 S.W.3d 759, 765 (Mo.Ct.App. 2002)).

Towne on the other hand contends the parties intended to keep the NC Agreement in place until their independent contractor relationship ended. Thus, the "modification" of the terms of the independent contractor relationship in February 2009 did not amount to "termination" necessary to trigger the restrictive period within the NC Agreement. (Reply, Doc. No. 25, pp. 4-5) Moreover, the October 25, 2012 letter did not terminate the 2009 IC Agreement, as no other actions were taken by the parties to effect termination. (Reply, Doc. No. 25, pp. 3-4) In particular, Towne points to the fact that Double M/Hebron continued accepting payment under the 2009 IC Agreement and failed to take down placarding and return Towne property. Because the 2009 IC Agreement was not terminated until March 28, 2014, the restrictions in the NC Agreement remain in effect for three years thereafter. (Id., p. 2)

The Court does not have to decide this issue to resolve the instant motion. Even if the NC Agreement remains in force, the Court finds Towne has not established a protectable interest in trade secrets, which it identifies as its customer lists, vendor lists, and cost and pricing information. (Compl., Doc. No. 1, ¶¶ 42-53)

The Missouri Uniform Trade Secrets Act (MUTSA), Mo.Rev.St. § 417.450, et seq., defines "trade secret" as "a formula, pattern, compilation, program, device, method, technique, or process" that derives value from not being known and not being readily ascertainable by proper means by others who can obtain economic value from its use. § 417.453(4) RSMo (2000). To be considered a trade secret, the information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Id.; Conseco Finance Servicing Corp. v. North American Mortgage Co., 381 F.3d 811, 818-819 (8th Cir.2004). This definition has also been used in analyzing trade secrets as a basis for enforcing covenants not to compete. Brown v. Rollet Bros. Trucking Co., Inc., 291 S.W.3d 766, 776 (Mo.Ct.App. 2009) (citing Victoria's Secret Stores, Inc. v. May Dept. Stores Co., 157 S.W.3d 256, 262 (Mo.Ct.App. 2004)).

Customer lists and cost and pricing information are not specifically listed in MUTSA's definition of "trade secret." Moreover, in Brown, another trucking litigation case, the court held that customer lists and rate sheets are not trade secrets or protectable confidential information. "Customer lists are protectable as trade secrets only when they represent 'a selective accumulation of information based on past selling experience, or when considerable time and effort have gone into compiling it.' " Brown, 291 S.W.3d at 777 (quoting Kessler-Heasley Artificial Limb Co., Inc. v. Kenney, 90 S.W.3d 181, 188 (Mo.Ct.App. 2002)). Information that can be compiled from other, generally available sources such as names, phone numbers and

5

contact persons, is not protectable as trade secrets. Id. Likewise, the Brown court held as a matter of law that a rate sheet was not a trade secret that would give a future employer a competitive advantage. "[T]he information contained on the rate sheet was not a process or device for continuous use in the business; rather, it consisted of frequently changing rates and fuel surcharges." Id. at 779.

At the hearing, Defendants submitted the deposition transcript of Jerry Scott, former Vice President of Human Resources for Towne, taken on May 8, 2014. Scott had no knowledge whether Towne's customer list or "process and procedures" for managing its relationship with its carriers or shippers was in a written format, but testified that the customer list was a "constantly changing variable." Also at the hearing, Hebron testified that while he did not have access to the rate sheets while at Towne, he was still able to get the pricing rates from his weekly settlement sheets, demonstrating that it was information that could be obtained from other generally available sources.

Based on the evidence now before the Court, the Court does not consider Towne's customer lists and pricing information to be a trade secret under Missouri law. For this reason, Towne has also not established a likelihood of prevailing on its claim for misappropriation of trade secrets. Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC, 422 S.W.3d 312, 320 (Mo. 2014) ("A claim for misappropriation of trade secrets under the MUTSA has three elements: (1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief.").

Perhaps a full record might lead to a different conclusion, but for purposes of this preliminary injunction, the record is insufficient to show that Towne is likely to succeed on the

merits of its claims.

**B. Irreparable harm**

Regardless of the strength of its claim on the merits, a movant for preliminary injunctive relief must show a threat of irreparable harm. See Dataphase, 640 F.2d at 113 ("The likelihood that plaintiff ultimately will prevail is meaningless in isolation . . . [and] must be examined in the context of the relative injuries to the parties and the public."). Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Towne states that as a result of Double M/Hebron leaving to provide air freight services to Transport Express, it has seen a steep decline in business out of its St. Louis terminal from March to April 2014, with projected lost revenue of over $43,000, and more in the coming months. (Affidavit of Joseph Dooley, Doc. No. 4-1, ¶¶ 14-16) In addition, Towne asserts that the loss of an owner-operator with a fleet the size of Double M/Hebron's will negatively impact its good will and reputation in the industry. (Mem. in Supp., Doc. No. 4, p. 8)

Towne's alleged injuries are not "irreparable" in the sense they could not be addressed through money damages if Towne is successful following a trial on the merits. For example, in General Motors, GM sought a preliminary injunction to prevent its dealership from "dualing" by adding another manufacturer's auto lines to its offerings on the grounds that dualing would damage its own goodwill, reputation and customer relationships. The district court found GM's claim of lost customer relationships was equivalent to a claim of lost profits and thus quantifiable and compensable by damages. 563 F.3d at 319. The court further found GM's claim of intangible

injuries such as damaged goodwill and reputation was supported by nothing more than general business principles and therefore too speculative to establish irreparable harm. Id. See also Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) ("In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.") (internal quotation omitted).

Although failure to demonstrate irreparable harm is itself a sufficient ground to deny a preliminary injunction, Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), the court should also consider the injury that granting the injunction would inflict on the parties to the dispute and other interested parties, including the public. Dataphase, 640 F.2d at 113.

**C. Balance of harms**

The balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public. Noodles Development, LP v. Ninth Street Partners, LLP, 507 F.Supp.2d 1030, 1038-39 (E.D.Mo. 2007) (internal citations omitted). Both companies face financial risk by continuing the present litigation; however, in the absence of a finding that Towne will suffer irreparable harm if the injunction does not issue, this factor must favor Defendants. Carboline, 990 F.Supp. at 768.

**D. Public interest**

Although the Court has made no ruling on the validity of the NC Agreement at issue in this case, in general, the public interest is protected by enforcing valid contracts. See TLC Vision (USA) Corp. v. Freeman, 2012 WL 5398671, at * 5 (E.D. Mo. Nov. 2, 2012). Because there is no clear evidence that Defendants breached a contract, the public interest factor does not favor Towne.

**Conclusion**

In summary, the Court has examined the balance of the equities in light of the Dataphase factors and concludes that Towne has not met its burden of showing that a preliminary injunction should issue. Development of a further record may change the result at trial, however, based on the evidence now before the Court, the Court does not find Towne likely to succeed on the merits of its claims nor does the Court find there to be a threat of irreparable harm. American Equity Mortg., Inc. v. First Option Mortg. LLC, 2006 WL 3032417, at *6 (E.D. Mo. Oct. 23, 2006).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction [3] is **DENIED.**

Dated this 9th day of June, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE